No. 24-4195
_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

CHRISTINA ST. CLAIR,

*Plaintiff-Appellant,*


v.


OKANOGAN COUNTY, WASHINGTON, a municipal corporation; and
ISAIAH HOLLOWAY, an individual and employee of the OKANOGAN
COUNTY SHERIFF'S OFFICE

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Washington
No. 2:23-CV-00280-TOR
Hon. Thomas O. Rice

_____

**APPELLANT'S OPENING BRIEF**

_____

Tyler D. Hotchkiss
Foreman, Hotchkiss, Bauscher &
Zimmerman, PLLC
124 N. Wenatchee Ave., Suite A
Wenatchee, WA 98801
509-662-9602
tyler@fhbzlaw.com

*Attorney for Appellant*
Ms. Christina St. Clair

i

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................v

INTRODUCTION ..............................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATUTORY AND REGULATORY AUTHORITIES ...........................4

ISSUES PRESENTED.........................................................................4

STATEMENT OF THE CASE...............................................................5

SUMMARY OF THE ARGUMENT .....................................................10

STANDARD OF REVIEW .................................................................12

ARGUMENT ...................................................................................13

    I.    The district court abused its discretion in denying Ms. St. Clair the opportunity to amend, an opportunity she had not before been granted. ...................................................................................13

        A. The district court abused its discretion by failing to consider all of the five factors, the proper consideration of which favor allowing Ms. St. Clair the opportunity to amend her complaint. .................................................................14

        B. The district court abused its discretion by failing to address Ms. St. Clair's Proposed Amended Complaint.16

    II.    The district court erred when it dismissed Ms. St. Clair's *Monell* claim against Okanogan County ................................................20

        A.    Inaction and indifference by the County was consistent and widespread. Appellant's Complaint alleges repeated violations

and repeated notice to the County of constitutional violations..22

1. The OCSO had a policy, custom or practice of deputies pursuing criminally involved, drug addicted women they met through their duties for sexual contact and communication. This policy, custom or practice also involved deficient investigations of allegations involving inappropriate treatment of women and was widespread and consistent……………………………………………………..22

2. The OCSO had a custom, policy or practice of failing to discipline employees…………………………………………….25

3. The OCSO had a custom, policy or practice of inadequate management and recordkeeping, making employees' misconduct more likely and foreseeable……………………...27

B. The decision to promote Holloway from Deputy to Detective before investigating the Velaso Ortega allegations and the decision to keep Holloway in the Detective position after completion of the investigation constituted ratification of his unconstititional acts.................................................................29

C. Instead of considering the allegations as a whole, the district court dismantled Ms. St. Clair's complaint piecemeal......................30

D. The district court improperly held Ms. St. Clair's denial against her ....................................................................................33

III.  The district court erred when it dismissed as timebarred Ms. St. Clair's § 1983 and WLAD claims against Deputy Holloway and her WLAD and negligent retention and negligent supervision claims against Okanogan County..............................................................................34

A. Accrual here involves factual determinations and cannot yet be determined..................................................................................34

B. Even if it is posisble to determine accrual, the district court erred when it dismissed Ms. St. Clair's claims based on Deputy Holloway's acts against her in 2020 and 2021........................36

CONCLUSION ....................................................................................................39

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................27

*Beck v. City of Pittsburgh*,
   89 F.3d 966 (3d Cir. 1996) ............................................ 9, 20, 24

*Benavidez v. Cty. of San Diego*,
   993 F.3d 1134 (9th Cir. 2021) ...............................................12

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001)................................................16

*Carvalho v. Equifax Info. Servs. LLC*,
   629 F.3d 876 (9th Cir. 2010) ..................................................12

*City of Canton v. Harris*,
   489 U.S. 378 (1989)..................................................................22

*City of St. Louis v. Praprotnik*,
   485 U.S. 112 (1988)............................................................ 21, 23

*Davis v. Mason County*,
   927 F.2d 1473 (9th Cir. 1991) ...............................................19

*Forman v. Davis*,
   371 U.S. 178 (1962)..................................................................13

*Galindo v. Stoody Co.*,
   793 F.2d 1502 (9th Cir. 1986) ...............................................13

*Gibson v. County of Washoe*,
   290 F.3d 1175 (9th Cir. 2002) ...............................................21

v

*Gordon v. Cnty. of Orange*,
 6 F.4th 961 (9th Cir. 2021) ............................................................20

*Gregg v. Hawaii, Dep't of Pub. Safety*,
 870 F.3d 883 (9th Cir. 2017) ................................. 12, 13, 34, 35, 36

*Hartmann v. Cal. Dep't of Corr. and Rehab.*,
 707 F.3d 1114 (9th Cir. 2013) .......................................................12

*Henry v. Cty. of Shasta*,
 132 F.3d 512 (9th Cir. 1997) ................................... 21, 24, 25, 26

*Hernandez v. West Texas Treasures Estate Sales, LLC*,
 79 F.4th 464 (5th Cir. 2023) ..........................................................13

*Hunter v. Cty. of Sacramento*,
 652 F.3d 1225 (9th Cir. 2011) ................................................ 21, 25

*Huynh v. Chase Manhattan Bank*,
 465 F.3d 992 (9th Cir. 1995) .........................................................36

*Hyun Ju Park v. City & Cnty. Of Honolulu*,
 952 F.3d 1136 (9th Cir. 2020) .......................................................21

*J.K.J. and M.J.J. v. Polk County*,
 960 F.3d 367 (7th Cir. 2020) .........................................................30

*Larez v. City of Los Angeles*,
 946 F.2d 630 (9th Cir. 1991) ................................................... 28, 29

*Levine v. Safeguard Health Enterprises, Inc.*,
 32 Fed. Appx. 276 (9th Cir. 2002) ...............................................15

*Loeffelholz v. University of Washington*,
 175 Wn.2d 264 (2012)...................................................................39

vi

*Long v. County of Los Angeles*,

　　442 F.3d 1178 (9th Cir. 2006) ....................................................21

*Lopez v. Smith*,

　　203 F.3d 1122 (9th Cir. 2000) ....................................................16

*McRorie v. Shimoda*,

　　795 F.2d 780 (9th Cir. 1986) ............................................... 21, 26

*Mitchell v. Cty. of Contra Costa*,

　　600 F.Supp.3d 1018 (N.D. Cal. 2022).........................................25

*Monell v. Dept. of Social Servs. of City of New York*,

　　436 U.S. 658 (1978)....................................................................28

*Navarro v. Block*,

　　72 F.3d 712 (9th Cir. 1995) ........................................................20

*NewSpin Sports, LLC v. Arrow Electronics, Inc.*

　　910 F.3d 293 (7th Cir. 2018) ......................................... 13, 16, 20

*Nunes v. Ashcroft*,

　　375 F.3d 805 (9th Cir. 2004) ......................................................14

*Oviatt By and Through Waugh v. Pearce*,

　　954 F.2d 1470 (9th Cir. 1992) ....................................................22

*Pembaur v. City of Cincinnati*,

　　475 U.S. 469 (1986)............................................................. 29, 30

*Pouncil v. Tilton*,

　　704 F.3d 568 (9th Cir. 2012) ....................................... 37, 38, 39

*RK v. Venture, Inc. v. City of Seattle*,

　　307 F.3d 1045 (9th Cir. 2002) ....................................................34

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*,

　　786 F.3d 510 (7th Cir. 2015) ......................................................13

*Simmons v. U.S.,*
 805 F.2d 1363 (9th Cir. 1986) ......................................35

*Starr v. Baca,*
 652 F.3d 1202 (9th Cir. 2011) ............................. 12, 22

*Supermail Cargo, Inc. v. U.S.,*
 68 F.3d 1204 (9th Cir. 1995) .......................................34

*Telesaurus VPC, LLC v. Power,*
 623 F.3d 998 (9th Cir. 2010) ......................................16

*Thomas v. County of Riverside,*
 763 F.3d 1167 (9th Cir. 2014) ....................................20

*Vann v. City of New York,*
 72 F.3d 1040 (2d Cir. 1995) ......................................24

*Velazquez v. City of Long Beach,*
 793 F.3d 1010 (9th Cir. 2015) ............................ 20, 21, 24, 25, 28

*Wallace v. Kato,*
 549 U.S. 384 (2007) ...................................................34

*W.C. Jr. v. Rowland Unified School Dist.,*
 769 Fed. Appx. 471 (9th Cir. 2019) ..........................15

**Statutes**

 42 U.S.C. § 1983.......................................... 2, 3, 24, 28, 34, 37, 39

 Washington Law Against Discrimination (WLAD) ............... 2, 3, 34, 38, 39

 RCW 9A.56.140 ...........................................................7

 28 U.S.C. § 1331................................................................3

28 U.S.C. § 1343.................................................................3

28 U.S.C. § 1367.................................................................3

28 U.S.C. § 1291.................................................................4

## Rules

FRAP 4(a)(1)(A).................................................................4

Fed R. Civ. P. 12(b)(6) ........................................................12

Fed R. Civ. P. 15(a)(1) ........................................................15

Fed R. Civ. P. 15(a)(2) ........................................................12

## INTRODUCTION

This appeal concerns the dismissal of Ms. Christina St. Clair's First Amended Complaint ("complaint") against Okanagan County and Okanogan County Sheriff's Office Deputy Isaiah Holloway ("Deputy Holloway") for claims stemming from Deputy Holloway's manipulation, sexual harassment and sexual assault of her from 2014 - 2021. Ms. St. Clair encountered Deputy Holloway in 2014, when she was in the throes of drug addiction and involved in crime. Deputy Holloway knew this and used her as an informant to obtain information used in his work duties. He also used Ms. St. Clair's criminal activity against her to manipulate her into performing sexual acts. In December of 2014, Deputy Holloway was caught with his pants down – literally – next to the drug addicted Ms. St. Clair by her uncle, who called in a complaint to the Sheriff's Office. Deputy Holloway's superior gave him an undocumented talking to ("don't do it again"), but no other discipline, training or supervision, allowing Deputy Holloway to continue his manipulation, sexual harassment and assault of Ms. St. Clair, along with other similarly situated women, for years as a Sheriff's Office Deputy and later, as Detective.

Ms. St. Clair got clean and has completely turned her life around. She is a hard working single mom holding down a job and earning an online degree. Deputy Holloway's years of manipulation prevented her from understanding the

abuse she was suffering at his hand for what it was – an abusive use of authority in violation of her rights - for years. It was not until she learned, through reading an article, of Deputy Holloway's misconduct with other drug addicted, criminally involved women in Okanogan County that she started to recognize her injury.

The OCSO turned a blind eye to Deputy Holloway's abusive use of his position of authority to take advantage of the vulnerable women he encountered in his work. Other allegations of sexual misconduct by Deputy Holloway, and also by other County employees, similarly were ignored or received cursory treatment, records were improperly destroyed and citizen complaints were not recorded, creating an environment in which Deputy Holloway's repeat offenses were not held against him.

On September 26, 2023, Ms. St. Clair filed suit against Okanogan County and Deputy Holloway alleging constitutional violations of her right to due process and equal protection under 42 U.S.C. § 1983, violation of the Washington Law Against Discrimination ("WLAD"), and negligent supervision and negligent retention of Deputy Holloway by Okanogan County. The district court dismissed Ms. St. Clair's complaint with prejudice against Deputy Holloway after misapplying the statute of limitations and inappropriately determining accrual. The district court dismissed Ms. St. Clair's § 1983 claim against the County for failure to adequately plead a *Monell* policy, and denied her an opportunity to permissively

amend despite one not being extended previously, and despite Ms. St. Clair's demonstrating that she could remedy the perceived deficiencies. Ms. St. Clair's WLAD claim against the County was dismissed on statute of limitations grounds, as were her claims of negligent supervision and retention, though the grounds for those dismissals are not clear. Prior to dismissal, Ms. St. Clair requested the opportunity to amend. After dismissal, Ms. St. Clair filed a motion to alter and amend the judgment, along with a proposed second amended complaint ("PSAC"). The district court denied the motion to alter and amend and did not address the PSAC.

## JURISDICTIONAL STATEMENT

Ms. St. Clair sued Okanogan County, Washington and Deputy Isaiah Holloway in the U.S. District Court for the Eastern District of Washington, alleging constitutional violations by both defendants under 42 U.S.C. § 1983, a claim under the Washington Law Against Discrimination against both defendants, and claims of negligent supervision and retention against Okanogan County. The district court had original jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343 and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

The district court granted Defendants' motions to dismiss and entered a final judgment on February 12, 2024. 1-ER-20-47. Ms. St. Clair filed a motion to Alter

and Amend the Order dismissing her case on March 11, 2024. 2-ER-96-115. The

district court denied that motion on June 11, 2024. 1-ER-2-19. Ms. St. Clair filed a

timely notice of appeal on July 9, 2024. 3-ER-547-600; FRAP 4(a)(1)(A). This

Court has jurisdiction under 28 U.S.C. § 1291.

## STATUTORY AUTHORITIES

All relevant statutory and constitutional authorities appear in the Addendum

to this brief.

## ISSUES PRESENTED

I.      Whether the district court abused its discretion in denying Ms. St.

Clair the permissive opportunity to amend her complaint to cure any deficiencies

in her *Monell* claim, an opportunity she had not been afforded, and which she has

demonstrated she can effectively accomplish, and in failing to consider the

proposed second amended complaint provided as an exhibit to her motion to alter

and amend the judgment.

II.     Whether the district court erred in dismissing with prejudice Ms. St.

Clair's First Amended Complaint for failing to properly plead a *Monell* claim

against Okanogan County.

III.    Whether the district court erred in dismissing all of Ms. St. Clair's

claims against Deputy Isaiah Holloway and her state law claims against Okanogan

County based on statute of limitations grounds and should therefore be reversed

4

because determining accrual in this matter involves questions of fact; and because certain pled acts are within the statute of limitations.

## STATEMENT OF THE CASE

From approximately 2014 to 2021, Defendant Deputy Isaiah Holloway ("Deputy Holloway"), used his position of power in a small, rural community, first as a deputy and later as a detective at the Okanogan County Sheriff's Office ("OCSO"), to prey sexually upon drug addicted, criminally involved women whom he encountered through his duties. 3-ER-418, 419, 435, 437, 438, 442, 446, 455. Appellant, Ms. Christina St. Clair, is one of the women who suffered from and whose constitutional rights were compromised by Deputy Holloway's manipulation, control and abuse of power. 3-ER-418.

Defendant Okanogan County was on notice of Deputy Holloway's deviant sexual pursuits beginning at least in 2014 when a witness saw Deputy Holloway with his pants down engaging in sexual contact with Ms. St. Clair, a known criminal and drug addict, and called in a complaint to the OCSO about the inappropriate relationship. 3-ER-416, 417. OCSO leadership told Deputy Holloway to stay away from Ms. St. Clair and not to "do it again." 3-ER-419, 420. He did not, instead he continued the sexual contact with St. Clair into 2021, a fact the OCSO knew or should have known. 3-ER-420.  Specific sexual contacts by Deputy Holloway with Ms. St. Clair are provided in the complaint, including contacts from late 2020 and

2021, where Ms. St. Clair alleges Deputy Holloway facetimed her, showing her his penis, and while on duty came to her house uninvited, requested sex and inappropriately touched her. 3-ER-428, 429.

Holloway received no other discipline or training or increased supervision for his misconduct with Ms. St. Clair, 3-ER-423, allowing him to continue to abuse his position of power for years in violation of the constitutional rights of Ms. St. Clair, as well as other drug addicted women involved in the criminal justice system, several of whom are identified by name and/or initials. 3-ER-435, 437, 438, 446, 455.

In 2020, another complaint was called into the OCSO against Deputy Holloway related to his sexual relationship with another drug addicted female caught up in the criminal justice system, Ms. Velasco Ortega (the "V.O. Complaint").[1] 3-ER-445. In the investigation that followed Deputy Holloway admitted to having sex with Ms. Velasco Ortega twice beginning in 2019, as well as sexting with her. 3-ER-446. In addition to the two times they had sex off-duty, Ms. Velasco and Holloway had sex on a number of occasions while Deputy Holloway was on duty, in uniform, in his police car. 3-ER-442. The sexual interactions occurred while Ms. Velasco Ortega was being investigated for her involvement in a burglary and after she had

---

[1] Ms. Velasco Ortega's related case is currently pending before this Court. *See* Statement of Related Cases.

been found in possession of stolen property, 3-ER-440, a crime under Washington law. 3-ER-441, RCW 9A.56.140. Deputy Holloway was selected by OCSO over other candidates to be detective after the V.O. Complaint was made but before investigation into his actions with Ms. Velasco Ortega began. 3-ER-447. Again, Deputy Holloway received no real discipline, training or focused supervision after this episode, allowing him to find and seek out Ms. Velasco Ortega for sexual encounters after the investigation, which he did. 3-ER-439-452.

In total, the complaint alleges Deputy Holloway had sexual relationships with at least six different vulnerable women who were caught up in drugs and crime. (Ms. St. Clair, M.G., M.S.P., R.S.P., V.O., K.H.) 3-ER-416, 435, 437, 438, 446, 455. Deputy Holloway, however, is not the only OCSO employee who used his badge to extract sexual gratification from women encountered through their duties in violation of such women's constitutional rights over the relevant time period. *See* allegations regarding "J.W." at 3-ER-455-457,"B.I." at 3-ER-458-459, "T.P." at 3-ER-459.

A few of these allegations were investigated and many were not; in total, the complaint and PSAC detail at least ten separate deficient investigations involving seven different women and four different employees over a seven year period. 2-ER-130-131, 146, 148, 162, 165, 175, 184-185, 188-90. In addition, two separate allegations against Deputy Holloway went undocumented and uninvestigated, the

women involved in them ultimately unknown. 2-ER-171. These investigations involved three different Chief Criminal Deputies with the OCSO, the Sheriff, the Undersheriff and two different Sergeants. 3-ER-419 (Chief Rodriguez), 3-ER-455-56 (Chief Brown), 3-ER-446 (Chief Wright), 3-ER-434, 457 (Sergeant Weigel), 3-ER-456 (Sergeant Everett), 2-ER-182-183, 191-193, 211 (sheriff and undersheriff).

Ms. St. Clair's knowledge of her injury related to Deputy Holloway's sexual pursuit and relationship with her was delayed or eliminated due to his grooming and manipulation of and control over her. 3-ER-434. Ms. St. Clair was not aware of Deputy Holloway's targeted sexual relationships with other drug addicted women until late 2021 when she read about it in a news article. 3-ER-431. This forced her to start to realize how Deputy Holloway had been using his position of authority to manipulate her and control her for years and had lied about the nature of their relationship. 3-ER-431. Ms. St. Clair started having anxiety. 3-ER-431-432. Prior to this time, Ms. St. Clair had been unable to realize her own injury from Deputy Holloway's violations let alone that the County bore some responsibility therefore. 3-ER-431-434. Ms. St. Clair does not yet have a full understanding of her injuries caused by Deputy Holloway's abuse of his position of power over her lasting many years. 3-ER-432.

Ms. St. Clair also alleges the OCSO had a combined number of policies, practices and customs, such as improperly destroying documents, failing to record

8

citizen complaints and failing to document internal investigations, 3-ER-452-454, that "…created a culture of unaccountability and a custom whereby the OCSO would turn a blind eye towards its employees' misconduct and… employees knew they could [violate the rights of these women] without risk of losing their job." 3-ER-454. Okanogan County had notice of such severe deficiencies in its policies and practices no later than the summer of 2019, when it received an Audit evaluation of the Okanogan County Sheriff's Office done by the Washington Association of Sheriffs and Police Chiefs. 3-ER- 452-454. This Audit documents objectively some of the very practices and failures that led to Deputy Holloway's misconduct being overlooked or not taken seriously so that future complaints against Deputy Holloway were "insulated from other prior and similar complaints and treated in a vacuum." *Beck v. City of Pittsburgh*, 89 F.3d 966, 972-73 (3d Cir. 1996).

Ms. Vanessa Velasco Ortega now has a related case against Deputy Holloway and Okanogan County pending before this Court involving whether the district court properly partially denied Deputy Holloway qualified immunity. Docket No. 24-4930. Discovery has been completed in that matter but has not begun in Ms. St. Clair's. 3-ER-601-605.

The district court dismissed all of Ms. St. Clair's claims against Deputy Holloway and her state claims against Okanogan County based on the statute of

limitations.[2] 1-ER-28, 1-ER-46-47; 1-ER-10-11. The district court dismissed Ms.

St. Clair's *Monell* claims against the County and refused her the opportunity to

permissively amend despite her not previously having been extended such

opportunity, and despite her presentation of the PSAC in her motion to alter and

amend judgment proposing to cure the perceived deficiencies noted by the district

court in its order of dismissal. 1-ER-46-47; 1-ER-17-18.

## SUMMARY OF THE ARGUMENT

I.      After Defendant County filed a motion to dismiss, Ms. St. Clair

amended her complaint as of right.  The district court abused its discretion

thereafter when it failed to consider the five factors and failed to allow Ms. St.

Clair even one permissive opportunity to amend her complaint to cure perceived

deficiencies therein and comply with the district court's order.  Even when Ms. St.

Clair filed a proposed second amended complaint to cure the deficiencies as an

exhibit to her motion to alter or amend the judgment, the court abused its discretion

when it failed to acknowledge or address the proposed second amended complaint.

---

[2] It is not clear from the district court's Orders that the district court's decision to dismiss Ms. St. Clair's negligent retention and negligent supervision claims against Okanogan County was due to the statute of limitations, 1-ER-46 (declaring such causes of action "moot"). Ms. St. Clair asked for clarification on the state law claims in her motion for reconsideration, 2-ER-100, 113, but this particular point was not clarified. 1-ER-10-11, 18.

II.     Additionally, the district court erred when it dismissed Ms. St. Clair's

*Monell* claims against Defendant Okanogan County.  Ms. St. Clair demonstrated a

custom and practice of Okanogan County Sheriff's employees using their positions

of authority to seek out criminally involved and drug addicted women for sexual

activity, and of Okanogan County failing to acknowledge and properly investigate

these allegations when they came to the attention of upper management. These

instances were widespread and persistent, involving at least four employees, seven

different women and knowledge on all levels of upper management, including

approximately ten deficient investigations where almost no effective punishment

was delivered and several instances of knowledge where no investigation occurred.

Moreover, the sheriff's office had a custom and practice of destruction of or failure

to keep records, which resulted in protection of these employees.  The sheriff's

office ratified the acts of its employees when it promoted them after knowledge of

allegations and prior to any investigation.  The district court refused to analyze the

allegations in Ms. St. Clair's complaint on the whole, instead dismantling them in

categories and then finding them to be sporadic or inconsistent.

III.     Finally, the district court erred when it dismiss claims based upon the

statute of limitations.  Issues of fact remain regarding when Ms. St. Clair's claims

accrued.  Even if that were not true, acts that occurred in late 2020 and early 2021,

detailed in the complaint, are within the statute of limitations and cannot be dismissed.

## STANDARD OF REVIEW

### I. Denial of Leave to Amend Standard

This Court reviews a district court's decision to deny leave to amend for abuse of discretion. *See Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1141-42 (9th Cir. 2021). Rule 15(a)(2) provides that a trial court shall grant leave to amend freely "when justice so requires." Fed. R. Civ. P. 15(a)(2). "When the district court denies leave to amend because of futility of amendment, we will uphold such denial if 'it is clear, upon *de novo* review, that the complaint would not be saved by any amendment.'" *Gregg v. Hawaii, Dep't of Pub. Safety*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Carvalho v. Equifax Info. Servs. LLC,* 629 F.3d 876, 893 (9th Cir. 2010)(internal quotation omitted)).

### II. Fed. R. Civ. P. 12(b)(6) Standard

A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo by this Court. *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). Such a dismissal is affirmed "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Hartmann v. Cal. Dep't of Corr. and Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).

12

### III.     Statute of Limitations Dismissal Standard

This Court reviews a district court's dismissal of an action on statute of limitations grounds de novo. *Gregg*, 870 F.3d at 886. Where facts are not in dispute, the accrual date of a statute of limitations is a question of law that is reviewed de novo. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1508 (9th Cir. 1986).

## ARGUMENT

### I.     The district court abused its discretion when it did not allow Ms. St. Clair even one permissive opportunity to amend the complaint.

"[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Denying a request for an opportunity to amend without explanation can be an abuse of discretion. *See Hernandez v. West Texas Treasures Estate Sales, LLC,* 79 F.th 464, 468-69 (5th Cir. 2023). Specifically, it can be an abuse of discretion "where district courts dismiss an original complaint with prejudice, without addressing a proposed amended complaint." *NewSpin Sports, LLC v. Arrow Electronics, Inc.* 910 F.3d 293, 310 (7th Cir. 2018) (citing *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015) (district courts face a "high risk" of abusing their discretion when plaintiffs are denied any opportunity to amend)).

13

A district court considers five factors when determining whether to grant a Plaintiff leave to amend including, first, bad faith, second, undue delay, third, prejudice to the opposing party, fourth, the futility of amendment and fifth, whether the plaintiff has previously amended. *See Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004).

### A. The district court abused its discretion by failing to consider all of the five factors, the proper consideration of which favor allowing Ms. St. Clair the opportunity to amend the complaint.

In neither Order did the district court provide a full analysis applying the facts of Ms. St. Clair's case to the five factors the court addresses when considering whether to allow amendment. 1-ER-18; 1-ER-32-33, 46. Instead, the district court merely listed the five factors, noted that Ms. St. Clair herself initially denied having a relationship with Deputy Holloway when confronted, without explaining how that fact weighs against allowing her to amend – it should not[3] - and that Ms. St. Clair had amended her complaint once before (by right, not permission), and then abruptly concluded, without explanation, that "[f]urther amendment would be futile." 1-ER-18.

---

[3] It is not uncommon for sexual abuse victims to protect their abusers. In Ms. St. Clair's situation, where her abuser was protecting her from possible prosecution of crimes she may have been involved in, her refusal to confess to their sexual encounters when confronted by Deputy Holloway's superior is all the more understandable.

14

All factors favor granting Ms. St. Clair the opportunity to amend. Ms. St. Clair has acted in good faith, and without undue delay; she filed her first Complaint in September 2023, less than five months before the Order dismissing her suit. 3-ER-601-605. *See Levine v. Safeguard Health Enterprises, Inc.*, 32 Fed. Appx. 276, 278 (9th Cir. 2002)(finding district court abused its discretion in denying leave to amend where less than nine months elapsed between filing of the initial complaint and the order dismissing the suit "so delay considerations favor granting leave to amend"). No prejudice to Deputy Holloway or Okanogan County has been identified by the district court, nor is there any. *See* 1-ER-18. The district court has not previously granted Ms. St. Clair leave to amend. 3-ER-601-605; *see W.C. Jr. v. Rowland Unified School Dist.*, 769 Fed. Appx. 471, 472 (9th Cir. 2019)(finding district court abused its discretion in denying plaintiff leave to amend where plaintiff had already amended once). Ms. St. Clair filed her First Amended Complaint in response to Defendants motion to dismiss, which is her right as a matter of course under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a)(1).

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be "freely" granted "when justice so requires." This Court has held that a district court abuses its discretion in denying leave to amend "unless the district court 'determines that the pleading could not possibly be cured by the allegation of other

15

facts,'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.

2001) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)), or

unless it finds "the plaintiff had several opportunities to amend its complaint and

repeatedly failed to cure deficiencies," *Telesaurus VPC, LLC v. Power*, 623 F.3d

998, 1003 (9th Cir. 2010). Ms. St. Clair received no opportunity to cure

deficiencies described by the court and has only amended by right to address the

concerns of Defendant County, making it impossible to establish several

opportunities and a repeated failure to cure deficiencies. *See Telesaurus*, 623 F.3 at

1003. Ms. St. Clair can and will, if provided the opportunity, cure the deficiencies

alleged in the court's orders.

### B. The district court abused its discretion by failing to address Ms. St. Clair's Proposed Amended Complaint.

Ms. St. Clair demonstrated to the district court that further amendment

would <u>not</u> be futile, by preparing and presenting a red line proposed amended

complaint as an exhibit to her Motion for Reconsideration, directly responsive to

the district court's concerns identified in its earlier Order granting dismissal. 2-ER-

116-217. The district court failed to acknowledge, let alone address, this

submission. 1-ER-2-19. The district court's proclamation in its Order denying

reconsideration that "[f]urther amendment would be futile," 1-ER-18, without

recognizing this effort, let alone explaining why it is inadequate, is an abuse of its

discretion. *See NewSpin Sports, LLC*, 910 F.3d at 310.

16

Ms. St. Clair has added additional allegations to her PSAC, including at least

four additional allegations of *quid pro quo* sexual conduct that the County knew

about, 2-ER-154, 162, 171, the failure to investigate at least two different instances

of sexual misconduct involving Deputy Holloway despite notice, 2-ER-154, 171,

an additional allegation of notice as it pertains to Maddesyn George ("M.G."), 2-

ER-144-45, the failure to maintain records about investigations regarding specific

instances, 2-ER-130, 171-72, 175, 176-78, 179, and detailed allegations regarding

the Audit evaluation (the "Audit") from the Washington Association of Sheriffs

and Police Chiefs ("WASPC") that, in and of itself should be enough to establish

the County's deliberate indifference to constitutional violations of women by its

employees, and, at minimum, provided notice to the OCSO of severe deficiencies.

2-ER-172-181.

This Audit, provided in the summer of 2019 to the Sheriff and the

Undersheriff, policy makers for the County, 2-ER-211, documented the OCSO's

deliberate indifference. For example, the Audit detailed and criticized the OCSO

for never having conducted a review or analysis of critical incidents, including

biased policing related to women and internal affairs investigations. 2-ER-173.

The Audit said that review of these incidents was "critically important" so that the

OCSO could be aware of risky behavior by its deputies and so that the OCSO

would be paying attention and looking for trends that could pose a threat to

deputies or county residents. 2-ER-173.  The County failed to implement such a review, despite the Audit's recommendations and "critically important" mandate. 2-ER-173-74. The Audit also established that sexual harassment training was not performed, 2-ER-174, that there was no system in place to track complaints regarding bias and harassment of women by officers, 2-ER-174, and that there was no training on these bias issues, 2-ER-174.  Action was not taken after the Audit to correct these deficiencies. 2-ER-175.

The Audit also detailed shocking indifference toward the complaints of citizens, including complaints regarding the inappropriate sexual activities of their officers: Chief Deputy Wright of the OCSO at one point going so far as to say that if a complaint was not put in writing, she would not investigate it, presumably even if it involved constitutional violations of the rights of women. 2-ER-176. The OCSO demonstrated this to be true when it failed to investigate and document multiple complaints. 2-ER-154, 171. According to Ms. Wright, "if they feel strongly enough about [their complaint], they should put it in writing." 2-ER-176. The Audit and PSAC also documented internal affairs deficiencies, including a lack of training for investigators, and recommended correction. 2-ER-176-78. These recommendations were not addressed by the OCSO. 2-ER-176-78. Demonstrating deliberate indifference, the OCSO actively hid many of the recommendations and deficiencies from upper management. 2-ER-178.

18

In addition, the Audit concluded that the policies and procedures of the OCSO were insufficient to protect the public, were "outdated," "deficient," and not "relevant to the needs of the OCSO." 2-ER-172-78. The Audit found that the policies the OCSO did have were "largely ignored," that employees knew of the policies but felt they "took too much time" to implement and that the policy manual did not match actual practice. 2-ER-172-73. The recommendations of the Audit were not meaningfully implemented by the time Deputy Holloway's harassment and abuse of Ms. St. Clair ended. 2-ER-176-78.

Ms. St. Clair also explained in her motion requesting reconsideration that she can amend her complaint to include a *Monell* claim against the County based on a particular decision made by a final policy maker, in this case the Sheriff. 2-ER-109. When the Sheriff and Undersheriff, final policymakers for the Sheriff's office in matters of training decisions, *see Davis v. Mason County*, 927 F.2d 1473, 1480-81 (9th Cir. 1991), *cert. denied* 502 U.S. 899 (1991)(overruled on other grounds), became aware in 2019 of severe deficiencies in its policies and practices as detailed in the Audit - they failed to take corrective action to cure the deficiencies. 3-ER452-454. Ms. St. Clair experienced sexual harassment by Deputy Holloway both before and after this. 3-ER-428-29. These allegations provide a basis for her *Monell* claim and also for her negligent supervision and retention

19

claims against the County, which the district court improperly dismissed without analysis.

If granted the opportunity to amend, time has added additional knowledge and Ms. St. Clair could now allege a total of five complaints to Okanogan County involving potential sexual misconduct by Deputy Holloway or other deputies from the 2014-2021 timeframe that went uninvestigated, three of which involve *quid pro quo* components. *See Velazquez v. City of Long Beach¸* 793 F.3d 1010, 1028 (9th Cir. 2015) (citing *Beck v. City of Pittsburgh* for the proposition that five prior complaints is adequate for a reasonable juror to conclude that Chief of Police knew or should have known of a propensity for excessive force).

The failure of the district court to acknowledge or address the proposed amendments is an abuse of discretion. *NewSpin Sports, LLC*, 910 F.3d at 310.

## II.     The District Court Erred When It Dismissed Ms. St. Clair's *Monell* Claim Against Okanogan County.

A Plaintiff may establish a *Monell* claim against a defendant such as Okanogan County through allegations of its "longstanding practice or custom," that led to Plaintiff's injury. *See Thomas v. County of Riverside,* 763 F.3d 1167, 1170 (9th Cir. 2014). "Proof of random acts or isolated events is insufficient to establish custom." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995). Generally, more than a single instance of misconduct is required to establish a municipal custom. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). Rather,

20

the practice must be "well-settled." *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

A policy of inaction may be a policy within the meaning of *Monell*. *See Hyun Ju Park v. City & Cnty. Of Honolulu,* 952 F.3d 1136, 1141 (9th Cir. 2020). Correspondingly, when a County fails to supervise, reprimand or discharge an employee for committing a constitutional violation under color of law, *Monell* liability can attach. *See Henry v. County of Shasta*, 132 F.3d 512, 518-19 (9th Cir. 1997), *amended on denial of rehearing*, 137 F.3d 1372 (9th Cir. 1998); *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986). Additionally, a custom or policy of failing to investigate and discipline officers for their constitutional violations can lead to *Monell* liability. *Velazquez v. City of Long Beach¸* 793 F.3d 1010, 1027-28 (9th Cir. 2015); *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1235 (9th Cir. 2011).

"This court consistently has found that a county's lack of affirmative policies or procedures to guide employees can amount to deliberate indifference, even when the county has other general policies in place." *Long v. County of Los Angeles*, 442 F.3d 1178, 1189 (9th Cir. 2006). "Whether a local government has displayed a policy of deliberate indifference to the constitutional rights of its citizens is generally a jury question." *Gibson v. County of Washoe*, 290 F.3d 1175, 1194-95 (9th Cir. 2002).

Deliberate indifference to a person's constitutional rights "occurs when the need for more or different action 'is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers…can reasonably be said to have been deliberately indifferent to the need.'" *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470, 1477-78 (9th Cir. 1992) (quoting *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)).  "Whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Oviatt*, 954 F.2d at 1477-78. A decision regarding whether allegations in a complaint are sufficient to meet the *Monell* standard is a legal determination reviewed *de novo*. *Starr*, 652 F.3d at 1205.

### A. Inaction and Indifference by the County was Consistent and Widespread.  Ms. St. Clair's Complaint Alleges Repeated Allegations and Repeated Notice to the County of Constitutional Violations.

#### 1. The OCSO had a policy, custom or practice of deputies pursuing criminally involved, drug addicted women they met through their duties for sexual interaction.  This policy, custom or practice also involved deficient investigations of allegations involving inappropriate treatment of women, and was widespread and consistent.

In its initial Order, the Court acknowledged that Ms. St. Clair offered "four other women [besides Ms. St. Clair] with similar and detailed experiences with Defendant Holloway that resemble her own." 1-ER-42.  These incidents involved

22

*quid pro quo* exchanges of sex with criminally involved, drug-addicted women for leniency in criminal matters.

Ms. St. Clair alleged three additional employees inappropriately used their position of authority to have sexual relationships or attempted sexual relationships with an additional five women, similar to the allegations related to Deputy Holloway and Ms. St. Clair, 3-ER-455-457 (J.W.) 458 (B.I.) and 459 (T.P.). Deficient investigations regarding these allegations involved a large portion of the upper management of the OCSO, including but not limited to Chief Criminal Deputy Dave Rodriguez in 2014, 3-ER-419, Chief Criminal Deputy Steve Brown from 2015 to 2018, 3-ER-455-456, Chief Criminal Deputy Laura Wright in 2020, 3-ER-446, and at least two patrol sergeants, Justin Weigel, 3-ER- 436, 457, and Tait Everett. 3-ER-456. The PSAC alleges the Undersheriff and Sheriff knew about some of these allegations and the deficient investigations. 2-ER-182, 191-193, 211. The complaint's alleged deficiencies were "widespread" throughout time, employees and women affected. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)(the court has "long recognized" that a custom or policy may be inferred from widespread practices) (internal citations omitted).

If allowed to amend, Ms. St. Clair's proposed second amended complaint will detail at least ten separate deficient investigations involving seven different women and four different employees over a seven year period. 2-ER-130, 131,

146, 148, 162, 165, 175, 184, 185, 188, 188-190. In addition, two separate allegations against Deputy Holloway went undocumented and uninvestigated, the women involved in them ultimately unknown, 2-ER-171, making the widespread nature of the allegations even more far reaching than can be detailed.

The district court originally alleged that instances committed by one officer were not enough. 1-ER-42. Caselaw, however, is clear – a pattern for *Monell* purposes <u>can</u> be based on the repeated behavior of a single officer even if the court were to ignore the allegations related to the other employees. In *Beck v. City of Pittsburgh*, the 3rd Circuit reversed a district court's grant of judgment as a matter of law on plaintiff's § 1983 complaint against the City for insufficient evidence of custom where plaintiff argued a pattern based on just five complaints against the same officer. 89 F.3d at 972-73. The Ninth Circuit has cited *Beck* with approval. *Velazquez v. City of Long Beach,* 793 F.3d 1010, 1028 (9th Cir. 2015); *see also Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995)(reversing grant of summary judgment on plaintiff's § 1983 complaint against the city police department and officer where all civilian complaints were against one police officer). In *Henry v. County of Shasta*, the Ninth Circuit reversed a district court's grant of summary judgment with respect to the county defendant, concluding that the declarations of three people who experienced mistreatment at the Shasta County Jail by numerous individuals there on four different occasions along with the official records were

24

"sufficient to raise genuine issues of material fact as to the *Monell* claim." *Henry*, 132 F.3d at 521. By and through the complaint and the PSAC, the County had notice of at least seven different allegations against Deputy Holloway, four they "investigated" and three they did not. 3-ER-416, 435, 445, 457 (investigated); 2-ER-151-152, 154, 171. These allegations alone appear sufficient to establish a pattern and practice. In addition, the County had notice of other employees likewise participating in *quid pro quo* exchanges of lenience for sexual favors. 3-ER-455, 456, 458; 2-ER-182-184, 188, 191-193. Inadequate and non-existent investigations followed, resulting in the County failing to effectively discipline and supervise its officers. These allegations and evidence are sufficient to establish that Defendant County turned a blind eye and, as such, are entitled to an inference of a *Monell* policy or practice from a failure to investigate. *See Hunter*, 652 F.3d at 1234-35; *see also Mitchell v. Cty. of Contra Costa*, 600 F.Supp.3d 1018, 1028-1031 (N.D. Cal. 2022); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027-1029 (9th Cir. 2015).

**2.  The OCSO had a custom, policy or practice of failing to discipline employees.**

In addition to failed investigations, Ms. St. Clair alleges that Defendant Okanogan County failed to properly discipline Deputy Holloway (and other officers) for constitutional violations; for example, after Deputy Holloway admitted to his superior that he had sex with V.O. he was, in short order, promoted.

3-ER-446-447. After J.W. had been accused of engaging in similar sexual activities with drug addicted woman involved in the criminal justice system in Okanogan County, he was promoted, and put in charge of investigating fellow officer Holloway the next time a *quid pro quo* sexual complaint was made against Deputy Holloway. 3-ER-436 (the M.G. complaint) and 3-ER-455-457. Such failures to reprimand or discharge are appropriate grounds upon which policy or custom may be inferred, *see McRorie*, 795 F.2d at 784, as well as being post-event evidence, which the Ninth Circuit has said is "not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but may be highly probative with respect to that inquiry." *Henry*, 132 F.3d at 519, *amended on denial of rehearing* by 137 F.3d 1372 (9th Cir. 1998). "When a county continues to turn a blind eye to severe violations…- despite having received notice of such violations - a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference." *Id.*  In this case, as discussed, there are at least ten different noted instances where the County turned a "blind-eye."

Deputy Holloway's recent admissions confessing to engaging in sex with C.S.C. in 2017 and 2019, 3-ER-297, 305, after previously being confronted about his contact with her by OCSO leadership in 2014, provide new facts learned after the district court's initial Order was issued; these new factual admissions combined with Deputy Holloway's earlier admissions of similarly engaging in sex with V.O.

in 2019, make Ms. St. Clair's claims of the OCSO custom or pattern of turning a blind eye towards its employees' sexual misconduct with drug addicted, criminally involved women more plausible on its face. In other words, Deputy Holloway's new admissions are additional "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### 3. The OCSO had a custom, policy or practice of inadequate management and recordkeeping, making employees' misconduct more likely and foreseeable.

Ms. St. Clair has also pled that the OCSO polices, including inappropriately and unlawfully destroying documents, destroying records without authority or documentation, mismanaging evidence, failing to perform employee evaluations, failing to document internal investigations, failing to record citizen complaints, and failing to review or analyze critical incidents over time, 3-ER-453-454, were intentional and created a culture of unaccountability, a custom where the OCSO turned a blind eye towards its employee misconduct, and whereby employees knew they faced no consequence for their actions. 3-ER-454. The Audit, *supra*, details additional deficiencies that the OCSO knew about yet failed correct. 3-ER-452. "[G]eneral evidence of departmental treatment of complaints…can 'support…[a] theory that…disciplinary and complaint processes…contributed to [constitutional violations] because the procedures made clear to [the] officer that…[he] could get

away with anything." *Velazquez*, 793 F.3d at 1027 (quoting *Larez v. City of L.A.*, 946 F.2d 630, 646-47 (9th Cir. 1991)).

Under *Monell*, "[a] municipality cannot be held liable *solely* because it employes a tortfeasor." *Monell v. Dept. of Social Servs. of City of New York,* 436 U.S. 658, 691 (1978).   Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts injury that the government as an entity is responsible under § 1983." *Id.* at 694.  In this case, is it fair for the County to be held liable when over the course of seven years, the County had notice of four different employees performing inappropriate acts with ten different women, at least six of which allegedly involved *quid pro quo* allegations of leniency in exchange for sexual favors; when the County conducted either no or inadequate investigations, and failed to effectively punish the employees, offering promotions instead of actual punishment; when the County had severe deficiencies in internal investigations and record-keeping brought to its attention yet failed to address them? Related to Deputy Holloway, is it fair to hold the County liable when over the course of six years it knew about sexual misconduct with four different criminally involved, drug addicted women over six years, including an admission to one of the relationships and being caught in the act in the other? Okanogan

28

County's toleration of such pervasive, wide spread practices fairly exposes it to liability.

> **B.**     **The Decision to Promote Holloway from Deputy to Detective Before Investigating the Velasco Ortega (V.O.) Allegations and the Decision to Keep Holloway in the Detective Position after Completion of the Investigation Constitutes Ratification of his Unconstitutional Acts.**

A government's authorized decisionmaker's "decision to adopt [a] particular course of action…surely represents an act of official government 'policy.' *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). The decision to appoint Holloway as detective over other candidates before investigating the pending allegations against him involving V.O. was made by a policymaker for the OCSO. 3-ER-447, 450-451, 459. Such a decision ratified Holloway's unlawful conduct with Ms. Velasco Ortega. *See Larez v. City of Los Angeles*, 946 F.2d 630, 646-47 (9th Cir. 1991). After Holloway was appointed Detective, he then confessed his misconduct, and the OCSO kept him on as detective, further ratifying his unlawful conduct. *Id.*

Additionally, the OCSO violated the constitutional rights of C.S.C. and other women, as detailed in the proposed second amended complaint, when the final policy makers of the OCSO, Sheriff and Undersheriff became aware in 2019 of severe deficiencies in the policies and practices of the OCSO as detailed in the Audit and failed to take corrective action to cure the deficiencies. *See Pembaur,*

475 U.S. at 480 (1986); *see also J.K.J. and M.J.J. v. Polk County*, 960 F.3d 367, 380-381 (7th Cir. 2020).

A reasonable factfinder could determine based on these facts that the County is liable under *Monell* for its policy of turning a blind eye to its employees' sexual misconduct with women met through the course of their duties, failing to discipline, supervise, investigate, train its employees, and/or its ratification of Deputy Holloway's misconduct with a drug addicted, criminally involved woman.

### C. Instead of considering the allegations as a whole, the district court dismantled Ms. St. Clair's complaint.

Instead of considering Ms. St. Clair's allegations wholistically and viewing them as various manifestations of the County's custom of 'turning a blind eye to its employees sexual misconduct,' as detailed above, the district court sifted through them, isolating them in a divide and conquer approach that missed the forest for the trees, or the 'custom' for the 'acts.' The district court started its surgical analysis by lumping together the allegations of sexual misconduct involving Deputy Holloway and Ms. St. Clair, Deputy Holloway and K.H., Deputy Justin Weigel and S.R., Deputy Justin Weigel and K.F., County employee T.P. and A.B., and concluded that these allegations apparently lacked detail, saying they "are not enough to establish that the OSCO had an active practice of allowing sheriffs' deputies to violate the Fourth and Fourteenth Amendment rights of others." 1-ER-38-40.

30

Then, the district court separated out Ms. St. Clair's detailed allegations involving Deputy Holloway's sexual misconduct with four other women. 1-ER-42. The district court found "these four instances are not sufficient to allege a pattern or practice by the OSCO, because they do not implicate any other employee committing similar acts." 1-ER-42. As discussed *supra*, this conclusion is not consistent with Ninth Circuit precedent. The district court should have considered these allegations in conjunction with the aforestated ones instead of analyzing them in an isolated fashion based on a factor – that they were all committed by one officer -  irrelevant to the *Monell* analysis.

The district court likewise took an axe to Ms. St. Clair's allegations of the County's policy of inaction. The district court wrote that her allegations of a "policy of unaccountability in OCSO through a lack of necessary training, lack of discipline for misconduct, an internal policy of mishandling internal investigation, and a failure in supervision", would not "clear the high bar required by deliberate indifference and cause Defendant Okanogan County to be on notice that training throughout the department was lacking." 1-ER-45-46. The district court acknowledged Ms. St. Clair's allegations that the "OCSO knew about activity and did not investigate" and Ms. St. Clair's "contention that OCSO records are deficient" but concluded that it could not "find the conduct consistent enough to be an informal policy." 1-ER-14.

31

And, in yet another deconstruction, the district court found that some of Ms. St. Clair's allegations in her complaint were investigated by the sheriff's office, some investigations led to some sort of reprimand, and that some of the of the alleged relationships between officers and women involved in criminal activity were known to the OCSO and others may not have been. 1-ER-17. The district court concluded "these instances are taken as sporadic in the context with the rest of the incidents in [Ms. St. Clair's complaint], and thus do not give rise to *Monell* liability through either an informal policy or deliberate indifference via a failure to supervise or reprimand." 1-ER-17-18.

In breaking apart the various components of Ms. St. Clair's complaint and then concluding each part was "sporadic" or not "consistent enough," the district court failed to appreciate how together they paint the picture of the County's widespread and deeply embedded custom when it came to employees' sexual misbehavior with women encountered through their duties – turn a blind eye, don't take it seriously. Sometimes that meant not documenting or removing complaints and internal investigations. 3-ER-422-423, 452. Sometimes it meant giving employees' the mildest of reprimands - "not to do it again" – with no follow up training or supervision. 3-ER-420, 423-424, 438, 448-449. Other times it meant conducting deficient investigations or ignoring allegations of employee sexual misconduct altogether. 3-ER-423-434, 436-437, 446, 448, 453, 456-457, 459.

32

These practices, despite the various manifestations, were not "random" or "isolated" but part and parcel of a longstanding and widespread custom that tolerated its employees' violations of vulnerable, drug addicted women, who were unlikely to complain.

### D. The district court improperly held Ms. St. Clair's denial against her.

Three times the district court emphasized the fact that Ms. St. Clair denied having sexual encountered with Deputy Holloway when she was questioned about it. 1-ER-15, 18, 46. Under the circumstances as she alleges them, this is not surprising - it is not uncommon for sexual abuse victims to protect their abusers - why it is so crucial in the district court's evaluation of her *Monell* claim, though, is unclear. Deputy Holloway himself has admitted to lying to the district court as to whether he ever had sex with Ms. St. Clair. 1-ER-9-10.

When confronted by law enforcement about whether she was having sex with Deputy Holloway back in 2014, Ms. St. Clair was in active drug addiction, involved in crime, knew that Deputy Holloway had knowledge about her clearly criminal activities (and could be charged for them), and knew that Holloway was letting her off the hook in exchange for sexual encounters; aside from being a victim of abuse, she had many reasons to want to avoid getting him in trouble, getting herself in trouble and the County knew or had reason to suspect each of

them. 3-ER-419-422. Ms. St. Clair's decision not to disclose her relationship at that time is not a critical or even relevant fact in a *Monell* analysis.

### III. The district court erred in dismissing as time barred Ms. St. Clair's § 1983 and WLAD claims against Deputy Holloway and her WLAD and negligent retention and negligent supervision claims against Okanogan County.

#### A. Accrual here involves factual determinations and cannot yet be determined.

The district court erred in determining Ms. St. Clair's claims accrued in 2014 "when Plaintiff was made aware that her relationship with Deputy Holloway was in exchange for her criminal activity remaining uncharged and unpursued" 1-ER-28, and in subsequently dismissing all of her claims against Deputy Holloway and her state law claims against the County as untimely.

"[A] complaint cannot be dismissed unless it appears beyond doubt that the Plaintiff can prove no set of facts that would establish the timeliness…" *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1206 (9th Cir. 1995). While the statute of limitations for a section 1983 action brought in Washington is three years, *RK v. Venture, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002), the accrual date of a section 1983 claim is a "matter of federal law, 'governed by federal rules conforming in general to common-law tort principles.'" *Gregg v. Hawaii, Dept. of Public Safety*, 870 F.3d 883, 887 (9th Cir. 2017)(quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Under general common law principle, a cause of action accrues

"when the Plaintiff knows or has reason to know of the injury that is the basis of the action and the cause of that injury." *Gregg*, 870 F.3d at 887.

Accrual in situations such as Ms. St. Clair's involving sexual and emotion abuse by an authority figure upon whom the Plaintiff depends and trusts often involve fact questions related to when Plaintiff first discovered her injuries. *See Gregg,* 870 F.3d at 888-89; *Simmons v. U.S.*, 805 F.2d 1363, 1367-68 (9th Cir. 1986).

Ms. St. Clair relied upon *Gregg* and *Simmons* to support her argument that determining the statute of limitations in a sexual and emotional abuse claim is not a de facto application of when the acts occurred. 3-ER-362-364. The district court attempted to distinguish *Simmons* and other authority on this point, 1-ER-30-32, but failed to address or acknowledge the *Gregg* decision by this Court and relied upon by Ms. St. Clair. While the *Gregg* case involved a plaintiff harmed by her counselor, the principle applies to Deputy Holloway's abuse of his special position of authority over the vulnerable Ms. St. Clair: "This special relationship…sometimes prevents the patient from questioning the wrongful activity or recognizing it as the source of her injuries." *Gregg*, 870 F.3d at 888-89. Ms. St. Clair was a drug addict caught up in crime at the time Deputy Holloway first sought sexual contact with her, further hindering her ability to comprehend her injuries and their cause by Deputy Holloway, who was simultaneously claiming to

protect her from prosecution. 3-ER-421-422, 427-428, 431-432. Ms. St. Clair alleges her ability to independently recognize injury stemming from Deputy Holloway's abusive use of power over her by sexually pursuing and then engaging in a sexual relationship with her for years was delayed and likely eliminated due to his grooming and manipulation and control over her. 3-ER-431-432. It was after Ms. St. Clair read about Deputy Holloway similarly targeting other drug addicted, criminally involved women in her community that she started to realize he had used his position of authority to manipulate and control her for years. 3-ER-431-432. Ms. St. Clair has alleged "facts making it plausible she neither knew nor reasonably should have known she was injured" by Deputy Holloway before November 2021. *See Gregg*, 870 F.3d at 889. It is not "apparent on the face of the complaint" that the statute has run, making dismissal inappropriate. *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 1995).

> **B. Even if it is possible to determine accrual, the district court erred when it dismissed Ms. St. Clair's claims based on Deputy Holloway's acts against her in 2020 and 2021.**

Ms. St. Clair's initial complaint was filed on September 26, 2023. 2-ER-605. Ms. St. Clair alleges Deputy Holloway sexually harassed her in late 2020 and 2021 via facetiming her and showing her his penis and coming to her house uninvited while working, requesting sex and groping her buttocks and otherwise

36

inappropriately touching her, violations which occurred within the three year statute of limitations. 3-ER-428-429.

This Court has found that, in the section 1983 context, "a court must determine whether a claim is based on an independently wrongful, discrete act, and if it is, then the claim accrues, and the statute of limitations begins to run, from the date of that discrete act, even if there was a prior, related past act." *Pouncil v. Tilton*, 704 F.3d 568, 578-79 (9th Cir. 2012). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Pouncil v. Tilton*, 704 F.3d 568, 578 (9th Cir. 2012). Alternatively, if later acts "involve the delayed, but inevitable, consequence" of prior violations, they can be dismissed as untimely. *See id.* at 581.

The district court rejected applying *Pouncil* to Ms. St. Clair's case finding Ms. St. Clair's claim "is not analogous to the type of violation contemplated in *Pouncil* in which the court found each time a prison denied the plaintiff's request for a conjugal visit with his wife, a new violation of his Islamic faith occurred." 1-ER-7. The district court reasoned that in *Pouncil* the "denials were each an 'independently wrongful' act because his claim did 'not rely on any acts that occurred before the statute of limitations period to establish a violation' of his rights." 1-ER-7. The district court continued that it is "not persuaded that Defendant Holloway's later behavior could be described as "discrete acts" because

37

Plaintiff alleges that their relationship was built as the result of coercion over time." 1-ER-8. And that "the criminal activity that he was allegedly safeguarding seems to be Plaintiff's same or largely similar drug related activity during the entire eight-year affair." 1-ER-8.

Ms. St. Clair disagrees that her claims based on Holloway's 2020 and 2021 offenses rely on acts occurring before the statute of limitations period. Each time Deputy Holloway misused his position of authority over Ms. St. Claim to extract or attempt to extract sexual contact and communications from her it its own "independently wrongful, discrete act" rather than the "delayed but inevitable, consequence" of his previous sexual offenses against her. *See Pouncil*, 704 F.3d at 581. It is simply not true that the committing of one sexual offense against an individual inevitably leads to more. Nor is it true that if a victim fails to take legal action within the first three years of such an offense, that she is barred from doing so should she be victimized again in the future. A victim cannot be denied recourse because she cannot see the future. Just because Ms. St. Clair may have had a complete and present cause of action in 2014 based on actions that had already occurred should not prevent her from bringing a later claim based on similar offenses that had not yet happened.

Additionally, Ms. St. Clair's claims under state law, claims under WLAD and for negligent supervision and retention, should survive summary judgment as

38

certain acts by Deputy Holloway against Ms. St. Clair fall within the relevant statute of limitations. *See Loeffelholz v. University of Washington*, 175 Wn.2d 264, 273-274 (2012) (en banc) (acts within the statutory 3 year period under WLAD are actionable and earlier acts may be relevant). To the extent some of Deputy Holloway's acts against Ms. St. Clair occurred within three years of her filing her complaint, such acts can independently form the basis of her § 1983 claim, as well as the basis for her WLAD claim against both Deputy Holloway and Okanogan County, and her negligent supervision and retention claims against Okanogan County, and cannot be dismissed as untimely because "each wrongful act starts a new clock." *Pouncil*, 704 F.3d at 583.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed, and the case remanded, upholding the First Amended Complaint and allowing discovery to proceed or, in the alternative, to allow Ms. St. Clair the opportunity to amend her complaint and allow discovery on the question of accrual to proceed.

Date:  August 19, 2024

<div style="margin-left:40%">

Tyler D. Hotchkiss
Foreman, Hotchkiss, Bauscher &
Zimmerman, PLLC
124 N. Wenatchee Ave., Suite A
Wenatchee, WA 98801

</div>

39

509-662-9602
tyler@fhbzlaw.com

*/s/* Tyler D. Hotchkiss

*Attorney for Appellant*
Ms. Christina St. Clair

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s) 24-4195_____**

The undersigned attorney or self-represented party states the following:

[  ] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ x ]   I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

A related case exists in the Eastern District of Washington by the name of Velasco v. Okanogan County and Isaiah Holloway (the "Velasco Matter"). The Case No. is 2:22-cv-00195-TOR. The matter is on interlocutory appeal under 9th Circuit Case No. 24-4930 and a motion to stay is currently pending before the district court.

The Velasco matter involves the same defendants, and the same or closely related issues (i.e., very similar events). The Plaintiff (i.e., the alleged victim) is different.

**Signature ____/s/ Tyler D. Hotchkiss____ Date _8/19/2024_____**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-4195_____

I am the attorney or self-represented party.

**This brief contains 9,223 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature ___/s/ Tyler D. Hotchkiss_____ Date _8/19/2024_____